# EXHIBIT A

Honorable Paul Crotty
US.District Court Judge
Southern District of New York
500 Pearl Street
New York, NY

Dear Honorable Judge Crotty,

Committing this offense has been the worst mistake of my life. As this is the only criminal activity I've ever been involved in.

At the time of the offense, I was not aware of the impact of identity and credit card theft, as it was not until late 2004 when I obtained my first credit card at Toronto Dominion Bank; I have since learned that in today's society, so much of a person's financial life is encompassed in their personal identity and credit information. My actions put this information in unauthorized hands.

The realization of the vulnerable position this has put the victims in, has been of great regret, and of disappointment in my actions.

Prior to the offense, I was unemployed and homeless when Lanre Elekede was the only person that made the effort to assist me in my time of need. Lanre let me live with him rent-free, and he paid for numerous other expenses including my food. Lanre truly treated me like a family member. This assistance was heartfelt and was a significant factor in my decision to assist Lanre in obtaining the personal and credit cards information for the clients of BetOnSports.

I understand that these activities were wrong and against the law. I have never felt right about what I did; it was a mistake that I just wanted to forget about. Since that time (late 2004) I began to distance myself from Lanre.

Since the offense, I have held a number of jobs in call centers and in the construction industry. Having experienced the hopelessness and hardship that comes with being homelss, I volunteered at Sojourn House in Toronto. Sojourn House is a local charitable organization which provides shelter and meals to new or homeless people in the community. In addition to assisting at all levels of the organization; I also worked with the outreach counsellor where I had the opportunity to help on a personal and individual basis with many of the people that came to the shelter for help.

In May 2008, I obtained my high school diploma, and prior to my arrest I was working full-time for Nabors Production Services, an oilfield company that performs oil and natural gas rig operations in and around Alberta, Canada.

Though my incarceration has been extremely difficult, it has given me time to reflect on the moral aspects of what I've done. It has been at times demoralizing, however I also am looking at this time of tribulation as an opportunity to put this offense behind me. Carrying it in mind for the last years has not been easy.

Knowing the potential harm to the victims, as well as the negative impact this has had on my life and reputation, has reaffirmed my decision that I would never compromise my values and put myself and or my family through something like this ever again. I am truly sorry for what I have done.

Your honor, I humbly request your consideration for leniency in my sentencing.

Sincerely,

Patrick Kalonji Ngoyi

# EXHIBIT B

7103ELES                    Sentence

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4            v.                          05 CR 494 (RMB)

5  LANRE ELEKEDE,

6            Defendant.

7  ------------------------------x

8                                  New York, N.Y.
                                   January 24, 2007
9                                  2:30 p.m.

10

   Before:
11
                   HON. RICHARD M. BERMAN,
12
                                        District Judge
13

14                    APPEARANCES

15 MICHAEL J. GARCIA
        United States Attorney for the
16      Southern District of New York
   MARCUS A. ASNER
17      Assistant United States Attorney

18 JOSHUA DRATEL
   RENITA THUKRAL
19      Attorneys for Defendant

20

21

22

23

24

25

7103ELES                    Sentence

1              (In open court)

2         THE COURT:  I take it from recent correspondence, I

3    think it was correspondence, that counsel wish to proceed today

4    to sentencing and to not have a Fatico hearing in connection

5    with sentencing, to rely on the submissions and whatever

6    statements they might make.

7         MR. DRATEL:  Correct, your Honor.

8         THE COURT:  Okay.

9         MR. ASNER:  Your Honor, just for a housekeeping matter

10   before we go further, through no fault of the defense, I didn't

11   get the letter that they had submitted until today.  I have

12   read it so there is no problem there, but my concern is one of

13   privacy.  Exhibit A to their letter contains identity

14   information, so that I would ask that --

15        THE COURT:  Identity of?

16        MR. ASNER:  Victims.  I would ask that if it be filed,

17   it be filed under seal.

18        MR. DRATEL:  No objection to that, your Honor.

19        THE COURT:  All right.  I don't have a problem with

20   that.  That's also true about your appendix.

21        MR. ASNER:  I believe my appendix was filed under

22   seal.

23        THE COURT:  I think the record should reflect when we

24   seal, we're sealing to the extent there's confidential

25   information such as birth dates or addresses and the like.

7103ELES                    Sentence

1       So, in connection with the sentencing, I have reviewed

2   the presentence investigation report, which is approved on or

3   about October 10, 2006, as well as the addendum and the

4   sentencing recommendation of that same date.  And I've gotten

5   correspondence from the lawyers, defense counsel dated

6   December 4, 2006, January 17, 2007, and January 23, 2007.  And

7   a letter from Mr. Elekede himself dated November 3, 2006.  And

8   from the government, submissions dated October 6, 2006, and

9   December 18, 2006.

10      Anything I missed that you wanted me to look at?

11          MR. DRATEL:  No, your Honor.

12          MR. ASNER:  No, your Honor.

13          THE COURT:  Okay.  Globally, the defense is asking for

14   a sentence of time served.  And the government is suggesting

15   that the guideline range is 51 to 63 months and is requesting a

16   sentence within that range.  Is that fair?

17          MR. ASNER:  That's correct, your Honor.

18          THE COURT:  Okay.  So in sentencing a defendant,

19   following the Supreme Court's decision in United States v.

20   Booker and the related Fanfan case, and subsequent cases,

21   including one mentioned by defense counsel handed down in the

22   last day or two, dealing with the State of California's

23   sentencing regime, and also following our own Circuit, the

24   Second Circuit's decision in United States v. Crosby, and

25   subsequent cases, the sentencing courts are instructed that

7103ELES                    Sentence

1   United States sentencing guidelines are no longer mandatory,

2   and in fashioning sentence, the Court must, and in this case I

3   have, and I'll try and explain what I mean when I say I have,

4   considered the factors listed at 18 United States Code, Section

5   3553(a).

6          And I know you know this, but those factors include

7   the nature and circumstances of the offense, the history and

8   characteristics of the defendant, the need for the sentence to

9   achieve certain objectives, including reflecting the

10  seriousness of the offense, promoting respect for the law,

11  providing a just punishment for the offense, and affording

12  adequate deterrence, protecting the public from further crimes,

13  and providing the defendant with any needed educational or

14  vocational training or medical care or other correctional

15  treatment in the most effective manner.

16         We also look at the kinds of sentences that are

17  available, the kinds of sentence and the sentencing range

18  established under the sentencing guidelines.  I've just said

19  those are no longer mandatory but they are one of the factors

20  to look at under 18 U.S.C. Section 3553(a), and indeed it is

21  the practice in this district to start sentencing with an

22  evaluation of the sentencing guidelines, even though, as I

23  said, they are no longer mandatory.

24         We also look at any policy statements issued by the

25  sentencing commission, and the need to avoid unwarranted

7103ELES                    Sentence

1    sentence disparities among similarly situated defendants, and

2    lastly, the need to provide restitution.

3            Incidentally in that latter regard, I'm not sure I saw

4    in the record the detailed listing of restitution facts that

5    one would need and if restitution were opposed.

6            MR. ASNER:  Your Honor, we can supplement that.  Your

7    Honor has 90 days to do that, and I frankly don't recall

8    whether there was submissions on that.  If there are, I'll

9    point your Honor to them in a subsequent letter.  Other than

10   that, I would ask that we use the 90 days to go ahead and do

11   that.

12           THE COURT:  As I recall, there are submissions with

13   respect to named victims, and also to some extent amounts, but

14   we don't know what out-of-pocket loss may or may not have been

15   incurred, what may have been recovered.

16           MR. ASNER:  We can pull that together for the Court.

17   And I think it may end up not being very controversial, but

18   we'll work with that.

19           MR. DRATEL:  The Court is correct in terms of the

20   difference between a guidelines calculation and the restitution

21   calculation.  There are many instances in which one would not

22   include, even the guidelines calculation permitted a formula

23   for each device.  It would not be the same for restitution.

24   Relevant conduct, all of the things that change that equation.

25           MR. ASNER:  That's true.

7103ELES                    Sentence

1        THE COURT:  For restitution purposes -- you can point

2   out to me if you feel they are in the papers where I would find

3   that list, which also needs to have certain addresses and

4   mailing, etc., etc.

5        MR. ASNER:  We'll handle that, your Honor.  Thank you.

6        THE COURT:  Okay.  Why don't we skip to consideration

7   of the guidelines.  Assuming for a moment -- as I said, we

8   start with the guidelines calculation.  Just so you have a

9   heads up, it's my intention to impose what's called a

10  non-guideline sentence in this case.  And the reason is largely

11  or in significant part because it's not the easiest thing in

12  the world to affix the issue of loss in this case, counsel for

13  defense and counsel for the government have gone back and forth

14  to a considerable degree on particularly -- on many issues but

15  particularly on the issue of loss.  And also relatedly the

16  number of victims.

17       But Crosby itself speaks to this very point, and it

18  says that a judge, talking about how one sentences in the

19  post-Booker, post-Booker world, that the sentencing judges

20  remain under a duty with respect to the guidelines to consider

21  them, along with the other factors listed at 18 U.S.C. Section

22  3553(a).

23       The Crosby court goes on to say that a judge cannot

24  satisfy this duty by a general reference to the entirety of the

25  guidelines manual, followed by a decision to impose

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7103ELES                    Sentence

1  non-guidelines sentence.  But then it says also in one

2  circumstance, however, this is the Crosby court talking,

3  precise calculation of the applicable guidelines range may not

4  be necessary, now that the duty to apply the applicable

5  guidelines range is not mandatory, situations may arise where

6  either of two guidelines ranges, whether or not adjacent, is

7  applicable.  But the sentencing judge, having complied with

8  Section 3553(a), makes a decision to impose a non-guideline

9  sentence, regardless of which of the two ranges applies.

10        And then the last quoted sentence which I think

11  applies to us, this leeway should be useful to sentencing

12  judges in some cases to avoid the need to resolve all of the

13  factual issues necessary to make precise determinations of some

14  complicated matters, for example, determination of monetary

15  loss.

16        I have nevertheless made a determination of monetary

17  loss, which I am going to go over with you in a minute, but

18  there is a lot of disagreement among counsel on this issue

19  here, so I think the Crosby language I've just cited is

20  applicable and I do intend to impose a non-guideline sentence.

21        The presentence investigation report has determined

22  the offense level to be 22, the criminal history category to be

23  I, and comes up with a guideline range of 41 to 51 months.  The

24  government says that that guideline range is 51 to 63 months.

25  I conclude if one were doing a guidelines calculation that the

7103ELES                    Sentence

1    guideline range would be 37 to 46 months, and briefly, or not

2    so briefly, here is how I arrive at that range.

3          First of all, we start with United States sentencing

4    guidelines 1B1.3 and 2B1.1 which tell us two principles that

5    are of relevance.  One is that in a case like this, we consider

6    relevant conduct where there are jointly undertaken criminal

7    activity that includes all reasonably foreseeable acts and

8    omissions of others as well as the defendant in the furtherance

9    of the jointly undertaken activity.

10         And the second prong that I recited which relates to

11   offenses involving stolen credit cards and access device fraud,

12   there is a minimum loss amount per device or card of $500.

13         The government indicates in its submission that the

14   investigation revealed that Mr. Elekede used e-mails, e-mail

15   accounts called getting2K@Yahoo.com, that's one of the e-mail

16   accounts.  Another is getting2K@Hotmail.com.  Another is

17   Elekede@Hotmail.com, another is Elekede1@Yahoo.com.  Another is

18   Mugun500@Yahoo.com.

19         The government also says that a Miami address used in

20   the getting2K@Yahoo.com account was associated with Lanre

21   Elekede, and that certain photos of the defendant were sent or

22   received by this same account.

23         The government argues -- I'm summarizing -- that the

24   loss amount is approximately $488,181.31.  That amount is

25   determined by listing all of the credit card numbers and the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7103ELES                    Sentence

1   bank account numbers and the personal identification numbers

2   and Social Security numbers contained in the e-mails and

3   attributing a loss amount of at least $500 to each, or if the

4   actual or attempted loss were greater than $500, then the

5   government indicates an amount for the actual or attempted

6   loss, and cites Government Exhibit J as well as United States

7   sentencing guidelines 2B1.1.

8           The defense, on the other hand, argues, among other

9   things, that the government is unable to prove that

10  Mr. Elekede's role was any more significant than that of his

11  coconspirator Mr. Wahab, whom incidentally I sentenced as well.

12  Mr. Wahab, however, was sentenced, unlike Mr. Elekede, pursuant

13  to a plea agreement as I remember.  Mr. Elekede pled pursuant

14  to what's called a Pimentel letter.

15          Defendant argues the loss figure should be the same

16  both for Mr. Elekede as it was for Mr. Wahab.  And cites in

17  support of its argument, among other things, the case I just

18  referred to a minute ago, Cunningham v. California, the Supreme

19  Court decision that came down in the last day or two.  Which,

20  among other things, confirms the advisory nature of the

21  sentencing guidelines.

22          And defense counsel also says that sentencing

23  determinations based on, for example, judicial fact finding of

24  loss, would mimic California's unconstitutional tier system

25  because it requires judicial fact finding under a preponderance

7103ELES               Sentence

1    standard, instead of a jury's reasonable doubt standard.

2    That's the defense letter dated January 23, 2007, at pages

3    three to four.

4         In any event, my own calculations here is what I would

5    do.  I would look at the following credit cards or access

6    devices, what they found in e-mails included at

7    Elekede@Hotmail.com, and the accounts there I'm referencing are

8    one dated 4/2/03, that's April 2, '03, and found in an e-mail

9    referencing Jim Apovinian and Robert Smiskek; a May 2603 e-mail

10   referencing Richard Uren; a July 21, 2003, e-mail referencing

11   Nimesh Patel; July 21, '03, e-mail referencing Christopher

12   Baltz; a July 23, 2002, e-mail referencing Robert Ngo and Aron

13   Motoyana; September 19, 2002, e-mail referencing Dana Novoson;

14   a May 16, 2003, e-mail referencing Kenny Dang.  These cards

15   devices totalled in my calculation $38,916.17 in losses and

16   involved some nine victims.  See Government Exhibit J.

17        In addition, the following credit card access devices

18   were derived from e-mails in the Mugun500 account:  An 8/10/02

19   e-mail referencing Christoff Oney; a June 22, '03, e-mail

20   referencing Robert D. Hare; an October 29, 2003, e-mail

21   referencing William Roberton; a December 28, 2003, e-mail

22   referencing Brent Mathis and Ashley Fauria; a January 28, 2004,

23   e-mail referencing Ryan Fung; a January 17, 2004, e-mail

24   referencing Dudley Neville and Daniel Kelly and Terry Lorenzen;

25   a June 30, 2003, e-mail referencing Ryan Chaffield; a June 29,

7103ELES                  Sentence

1    2003, e-mail referencing David Adams; a June 30, 2003, e-mail

2    referencing Agnieszka Klimek and William McClean; a May 7,

3    2004, e-mail referencing Adam Kaplan and Ashley Kaplan; an

4    October 31, 2003, e-mail referencing Richard Baer and Thomas

5    Vincent Perea; a November 24, 2003, e-mail referencing Micha

6    Page and Evan Pearlman and Matt Horinek; November 25, 2003,

7    e-mail referencing Alva Madsen and Anthony Robins; a

8    December 9, 2003, e-mail referencing Ronald Eli; and a

9    December 23, 2003, e-mail referencing Kevin Pinaggio and Brad

10   Krebs and Jason Jun Kichai.  These devices and cards totaled

11   $122,567.88 in losses and had some 26 victims.  Also that's

12   Government Exhibit J.

13           So the total amount of the losses for those two

14   accounts is approximately $161,484.05.  And 30 victims.

15           However, I continue in my analysis, and there is an

16   e-mail which I included dated 1/22/04 addressed to

17   Elekede@Hotmail.com, in which the following content is written:

18   "Hey, Lanre" among other items, and there were two e-mail

19   accounts that received copies of this e-mail, and those

20   accounts were getting2K@Hotmail.com, and getting2K@Yahoo.com.

21   Additionally, the materials submitted contain other e-mails

22   from Elekede@Hotmail.com with the curriculum vitae or resume of

23   Saheed Lanre Elekede attached.  And so I've incorporated those

24   as well in my analysis.

25           E-mail accounts getting2K@Hotmail account and

7103ELES                    Sentence

1   getting2K@Yahoo.com were involved in the instant case

2   conspiracy.  Including these e-mail accounts, the loss amount

3   is raised, and I have in this instance assigned to Mr. Elekede

4   the minimum loss amount of $500 per device, which I think is a

5   conservative estimate, that device that I attribute to these

6   latter accounts and e-mails and as reasonably foreseeable to

7   the defendant.

8           The inclusion of these additional accounts and victims

9   raises the number total number of victims to 115 individuals.

10  Not including those incidentally that appear as LNU in

11  Government Exhibit J, and raises the loss amount by an

12  additional $57,500 with a conservative estimate of $500 per

13  device.

14          So that brings us to the end of the story about loss

15  as far as I can determine, to be in excess of $200,000.  To be

16  more precise, I think it comes to 218,984.05.  And the total

17  number of victims conservatively estimated I think at 150.  The

18  calculation that would give us, we would have a base offense

19  level of six, because the amount of loss is in my opinion more

20  than 200 but less than $400,000, there would be a 12

21  enhancement because the number of victims is more than 50 but

22  less than 250, we'd add another four, and we'd add another two

23  for trafficking in unauthorized access devices.  I think that

24  Mr. Elekede is entitled to a three point, not a two point, a

25  three point reduction for acceptance of responsibility under

7103ELES                    Sentence

1    United States sentencing guidelines 3E1.1 A.   I'm accepting for

2    this purpose defense counsel's argument that the timing of the

3    plea was the result of a miscommunication between defendant and

4    counsel.

5            So, that give us in my opinion an offense level of 21,

6    and a corresponding range of 37 to 46 months.   Presentence

7    investigation report found that the offense level should be 22

8    because they only gave two level credit for acceptance of

9    responsibility and they concluded that the sentencing range

10   should be 41 to 51 months.

11           As I said before, government has concluded that the

12   offense level is 24, because they assign 14 level increase for

13   amount of loss in the government's view being in excess of

14   $400,000, and the government only give a two point reduction

15   for acceptance of responsibility, that's how the government got

16   to a 51 to 63 month sentencing guidelines range.   So that is

17   the guidelines analysis.

18           Now I am going to go back to the criteria under 18

19   U.S.C. Section 3553(a).   You indicated that I have reviewed the

20   submissions that you wanted me to review.   Mr. Elekede and his

21   counsel have had the opportunity to read and discuss the

22   presentence investigation report and the addendum and the

23   sentencing recommendation?

24           MR. DRATEL:   Yes, your Honor, we have.

25           THE COURT:   Mr. Elekede, you went over those materials

7103ELES                    Sentence

1    with counsel?

2            THE DEFENDANT:  Yes.

3            THE COURT:  And apart from these submissions, which

4    are extensive, are there any additional objections that either

5    of you has to the presentence report?

6            MR. DRATEL:  No, your Honor.

7            THE COURT:  Mr. Elekede, do you have any additional --

8    no.  How about the government?

9            MR. ASNER:  No, your Honor, just from our submissions.

10           THE COURT:  Okay.  Now, what I am going to do --

11   incidentally, I've changed my practice somewhat.  The

12   presentence investigation report we used to say at this stage

13   that we are returning it to the probation department and I'm

14   happy to do that, but I have in the last couple of months taken

15   to filing it so there is a record of it in the docket but

16   filing it under seal.  So just seems to me tidier that the

17   official docket will have a record that everybody knows and

18   assumes there of a presentence report.  I guess we are going to

19   send it to probation as well because they need to have a copy

20   of it.  One of the reasons I do it is it struck me that

21   sometimes we make revisions during the course of sentencing to

22   some of the actual provisions in the presentence report, so I

23   think it's handy to have the transcript of the proceeding and

24   the report, so to speak, in somewhat close proximity, so if

25   someone wanted to compare what was changed to the language --

7103ELES                    Sentence

1    that's the rationale.

2            And do you want me to go further, counsel, or do you

3    want to speak on behalf of Mr. Elekede at this time or how

4    would you like to proceed?  What I was going to do is turn

5    to -- I have to at some point to the factors at 18 U.S.C.

6    Section 3553(a) and tell you how I see them.

7            MR. DRATEL:  I think that would be better because

8    already I can tell the Court that you've cut my argument time

9    dramatically.  So hearing your consideration of those criteria

10   will probably do the same for that.

11           THE COURT:  It's hard to say.  It may go up when you

12   hear the analysis, I don't know.

13           MR. DRATEL:  It will --

14           THE COURT:  I'll give you as much time as you need.  I

15   said before the factors that we consider are the nature and

16   circumstances of the offense is one, along with the history and

17   characteristics of defendant.  And here, I should say that

18   first of all I think that we are clear about the offense.  The

19   offense is conspiracy, but at its core is identity theft and

20   use of Internet and credit cards illegally, so-called access

21   devices.  And there has been a plea in connection with a

22   Pimentel letter.  There was a co-defendant who we mentioned

23   before, Mr. Wahab, who I think stands in somewhat a different

24   situation in that he pled, Mr. Wahab did, in connection with a

25   plea agreement, in which, among other things, he waived his

7103ELES                    Sentence

1   appeal rights.   There was a restitution determination in that

2   case, in that plea agreement, the loss that was attributed to

3   Mr. Wahab was $35,000.   He received a sentence, if I remember

4   correctly, of 12 months and one day from me.

5         We are talking now about the nature and circumstances

6   of the offense and the history and characteristics of

7   Mr. Elekede.   Mr. Elekede is foreign born and under very dire

8   circumstances described by the defense appears to have lost his

9   family in Nigeria in what can only be described in defense's

10  submission as a massacre and based upon their Christian

11  religion.   So, I am accepting that dire background as true.

12        It also raises, however, certain issues about whether,

13  as does this offense, the circumstances under which he is in

14  this country, and there has been in the period of time since he

15  was first arrested for the underlying offense here and taken

16  into state custody.   First he's been in state custody.   He has

17  been in some immigration custody.   It's not entirely clear to

18  me that the immigration custody is necessarily directly related

19  to the offense.   But defense counsel argues it is, and I'm

20  willing to take that certainly into account in reaching a

21  sentence under 18 U.S.C. Section 3553(a).   And to do so, in the

22  history and characteristics of defendant section may apply, it

23  may apply elsewhere as well.   Defense says Mr. Elekede has

24  already been incarcerated altogether approximately 24 months,

25  that is to say including state custody, including whatever

7103ELES                    Sentence

1    immigration custody there may have been, and including federal

2    custody which I think commenced on or about May 25 of last

3    year.  Federal custody did.  That's how they get to 24 months'

4    incarceration.

5            As I say, also under these first category I've

6    considered his personal circumstances, including his biological

7    family and also his social family here in the United States

8    among other places.

9            So, the next category is the need for the sentence

10   imposed to reflect the seriousness of the offense and to

11   promote respect for the law, to provide just punishment,

12   reasonable sentence that's no more than necessary to constitute

13   a just and fair sentence, to afford adequate deterrence to

14   criminal conduct and to protect the public.  All of those one

15   could consider together.

16           It strikes me that identity theft and credit card

17   fraud are indeed very, very serious offenses, and conspiracy

18   such as this one related to those endeavors very serious.  I've

19   already said what I think about the number of victims and the

20   size of the loss.  I think that it is very important in this

21   area, certainly in all, but in this area perhaps in particular

22   to afford deterrence and to promote respect for the law and to

23   deter the defendant from these kinds of crimes.

24           So I certainly have considered and also I've read one

25   of the submissions from a victim named David Baer who says that

7103ELES                    Sentence

1    it taught me that there are some extremely dishonest people who

2    lurk out in cyberspace and that I, this is Mr. Baer talking,

3    must be far more careful in protecting personal information

4    that crooks could use to commit identity theft.  That was a

5    quote.  That's an example, I think, a clear example of a victim

6    in this case and the impact it could have on other persons as

7    well.

8         As to the third category of the kinds of sentence

9    available, available to the Court are different sentences,

10   different kinds of probation, time served, a term of

11   imprisonment followed by a term of supervised release,

12   supervised release with conditions.  And I have considered the

13   arguments of the government and the defense.  I don't believe

14   that the defense recommendation for a sentence of time served

15   would adequately meet the criteria of 18 U.S.C. Section 3553(a)

16   as I've described them up until this point.

17        I've also taken into account the government's analysis

18   and recommendation that there be a sentence of between 51 and

19   63 months as well as the probation department's recommendation

20   for a sentence of 41 months.

21        We've already considered the fourth category, which is

22   the kind of sentence and the sentencing range established under

23   the sentencing guidelines, and any policy statements issued by

24   the sentencing commission.

25        Now, another category, important one to the defense

7103ELES                    Sentence

1   and important one to be sure, is the issue of avoiding

2   unwarranted sentence disparities among similarly situated

3   defendants.  Defendant is arguing that the loss, but we've

4   already considered that, should be the same for both Mr. Wahab

5   and Mr. Elekede.  Namely $35,000.

6        I think there are distinctions between the two,

7   including, in particular, the fact that Mr. Wahab, among other

8   things, bargained for a plea agreement, which included waiving

9   his appeal rights and a stipulation to other factors.

10  Mr. Elekede is relying on what's called a Pimentel letter.

11       The last factor, to provide restitution, we are going

12  to defer until another date.

13       In any event, the net result of that analysis for

14  which I have read all of the submissions is that we should do,

15  first of all, a non-guideline sentence, and having considered

16  the factors at 18 U.S.C. Section 3553(a), it should be a

17  sentence of 14 months of incarceration, from and after today,

18  to be followed by a period of supervised release of three years

19  with certain terms and conditions which I will get to, and

20  restitution we are not going to do today so we won't fix that

21  amount at the moment.  There would also be a $100 special

22  assessment which is mandatory pursuant to 18 U.S.C. Section

23  3013.

24       Before I leave the subject though, do you have a sense

25  of what the restitution amount is that you are going to be

7103ELES                    Sentence

1   asking for approximately?  It doesn't have to be precise.

2          MR. ASNER:   Your Honor, I believe it's in the 30,000

3   to $40,000 range.

4          THE COURT:   You will be able to document --

5          MR. ASNER:   I believe that's right, your Honor.

6          THE COURT:   That goes into my consideration, and I am

7   relying somewhat on that, I'm not imposing a fine in addition

8   to what I am projecting is going to be restitution in that

9   approximate amount.  And that gives you my thinking.

10         So, Mr. Dratel, this might be a good time to hear from

11  you, Mr. Elekede, and counsel for the government.

12         MR. DRATEL:   If I may just have a moment, your Honor.

13         THE COURT:   This is a preview.

14         MR. ASNER:   Your Honor, I just have a question.  I've

15  not seen a sentence before where it's "from today."

16         THE COURT:   I am trying to under, 18 United States

17  Code, Section 3553(a), among all the circumstances I am trying

18  to take into account from Mr. Dratel's presentation that the

19  defendant has been incarcerated for somewhere near 24 months up

20  until today.

21         MR. ASNER:   But I think just as a technical matter --

22  I am going to argue about the decision -- but I think as a

23  technical matter, your Honor should take the amount that if you

24  choose 14 months at the end, you should take the amount of 14

25  months plus the time entering federal custody and do that.  I

7103ELES                    Sentence

1   think is the appropriate number, and I don't know what that

2   ends up being.

3           THE COURT:  I don't either exactly.

4           MR. ASNER:  It should be --

5           THE COURT:  Perhaps you do.

6           MR. ASNER:  I think it's in the PSR.  I think it's

7   February --

8           THE COURT:  Well, if you mean by federal custody, it's

9   May 25, 2006.

10          MR. DRATEL:  2005.

11          THE COURT:  2005.

12          MR. DRATEL:  I think that's 20 months exactly.

13          THE COURT:  Okay.

14          MR. ASNER:  So you should, if you are going to do the

15  14 months, essentially you should go from the May 2005, take

16  that time period, and add the 14 months to that.

17          THE COURT:  That is what I had done in my mind.

18          MR. ASNER:  Is that 36 months?

19          MR. DRATEL:  34, that's 20 months I think almost to

20  the day.  We have, I think if you look, we're four months short

21  of two years, right?  February, March, April, May.  Right.  So

22  20 plus 14 would be 34.

23          THE COURT:  Yes.  We are just waiting I think to hear

24  from Mr. Asner.

25          MR. DRATEL:  Yes.

7103ELES                    Sentence

1        MR. ASNER:   Okay.  So you're proposing a 34-month

2   sentence essentially.

3        THE COURT:   Is your math the same as Mr. Dratel?

4        MR. ASNER:   Yes, your Honor.

5        THE COURT:   Yes.  And the thinking is that he will

6   have served or has served, it is 14 months in my mind from

7   today as it were additional unserved, but it's 34 months if

8   that's the number that gets us to that point, that's my

9   calculation.  Yes.  So, Mr. Dratel.

10        MR. DRATEL:   Thank you, your Honor.  And again, I

11   appreciate the Court laying all that out so that we just don't

12   drone on about stuff that's not really in contest.  With

13   respect to I guess our issue is essentially I just want to

14   concentrate on the disparity part of it for this reason, in the

15   sense that while certainly a plea agreement --

16        THE COURT:   Disparity between Mr. Wahab and

17   Mr. Elekede.

18        MR. DRATEL:   Yes, yes.  While a plea agreement puts it

19   in a different context and a waiver of rights, while that can

20   affect the ultimate sentence, there is also really a question

21   of how the loss figure is calculated.  So that in the sense

22   that if the guidelines and the purpose of sentencing are

23   supposed to introduce or assure uniformity with respect to how

24   like offenders are treated, then it shouldn't necessarily

25   depend on the fact that one person had a plea agreement and one

7103ELES                          Sentence

1    person didn't in terms of how the guidelines are calculated.

2    So, I know that the Court can take that into account in

3    reaching a determination as to what is the appropriate

4    sentence, I think where you start from obviously also

5    determines where you end up.

6             To a certain extent, I guess Cunningham, as I think as

7    the Court noted, reinforced, I think, not only the advisory

8    nature of the guidelines, but also the fact they are really one

9    of seven, and I think the Court has gone through a thorough

10   analysis of those factors.

11            The other issue is the credit issue in the sense that

12   he, Mr. Elekede, has been in continuous custody since December

13   of '04.  Those first three months were state custody, and the

14   next three months were federal custody of one form other

15   another.  First two months were ICE custody, even though as we

16   said, we demonstrated the documents, the judge decided that he

17   didn't have jurisdiction to release Mr. Elekede from custody.

18   It was unclear as to precisely why he was in custody.  Also he

19   was actually transferred to law enforcement as opposed

20   immigration custody in April.  We have that information from

21   the public defender who represented Mr. Elekede in Florida.  I

22   don't know whether the Court has taken that entire period into

23   account, some of it or all of it.  I want to make sure our

24   position was clear with respect to the three months, the six

25   months, the one month, in terms of how that breaks down and so

7103ELES                    Sentence

1   to make sure that the Court is factoring that in, in terms of

2   giving credit, that the appropriate amount of credit granted to

3   Mr. Elekede on the back end.

4           THE COURT:  I am aware of his circumstances.  In terms

5   of a federal court sentence, I use as the trigger point the

6   came he came into federal incarceration.

7           MR. DRATEL:  I understand that.

8           THE COURT:  I am aware of the other circumstances, the

9   state case and the ICE custody, etc., as within the factors of

10  the history and characteristics of Mr. Elekede in reaching an

11  overall sentence.  But the overall sentence, the 34 months is

12  intended to run from the time he is in federal custody.  20

13  months up until today is I think the right number, and then 14

14  additional.

15          MR. DRATEL:  I guess principally in terms of restating

16  our argument for a lower sentence and a sentence that would be

17  the equivalent of time served is we are not asking for the same

18  sentence that the co-defendant got, a year and a day.  We are

19  asking for a sentence that is actually twice as much.  What

20  Mr. Elekede is looking at right now with the Court's proposed

21  sentence is almost three times as much.

22          Our position is that is too much of a disparity, too

23  much of a difference, and the time served would serve the

24  interests adequately that the Court has set forth, while at the

25  same time not instituting a disparity beyond that which is

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7103ELES                    Sentence

1   warranted.   Thank you, your Honor.

2                THE COURT:   Okay.   Yes.

3                MR. ASNER:   Your Honor.

4                THE COURT:   You want to hear from Mr. Elekede first?

5                MR. ASNER:   That's fine.

6                THE COURT:   Do you want to be heard?

7                THE DEFENDANT:   Thank you, your Honor, for granting me

8   this wonderful opportunity and to stand before your honorable

9   court to speak on my behalf.   I am grateful.   First and

10  foremost, I would like to express my sincere apology to the

11  good people of America where I sought refuge when I could no

12  longer stay in my country Nigeria.   I was gladly received by

13  the good people of America, and given me opportunity to be a

14  part of American.   Unfortunately, I cannot in any way justify

15  and I give myself in unwholesome activity that will negatively

16  affect the very people who protected me and protected me.   Your

17  Honor, I deeply regret my past behavior and I say I'm very,

18  very sorry.   I promise never again to get myself in such

19  activities or in anything that will bring me before you or any

20  of your colleagues again when given a second chance.

21                As I humbly pray that your Honor that your judgment

22  when passing your sentence on me, look unto God.   Personally I

23  look unto God.   All these problem is due to untimely death of

24  my entire family back in Africa.   So, I look unto your Honor

25  today, since I have nobody to help me, I would like to be

7103ELES                Sentence

1    humble and respectful of the courts and the people of America,

2    my sincere apology and your offense.  I have waited for past

3    two years to say sorry to American people and to someone in

4    justice system and to you in particularly I am very, very

5    sorry.  I'm asking for your kindness, mercy, and justice.  May

6    almighty God continue to guide you and bless you as you perform

7    your duty.  Thank you.

8            THE COURT:  Thank you.

9            MR. ASNER:  Your Honor, just a few points.  With

10   respect to the so-called disparity argument, actually, normally

11   the disparity talks about similarly situated defendants.

12           THE COURT:  Hold on just one moment.

13           MR. ASNER:  Normally the disparity argument talks

14   about similarly situated defendants in different districts.

15   And not a situation like this where we actually have defendants

16   who are not simply situated.  Mr. Wahab's situation, based both

17   on the evidence that we gathered in the case and also

18   information provided by Mr. Wahab's counsel, is very different

19   from Mr. Elekede.  He was a much smaller player.

20           THE COURT:  Mr. Wahab was.

21           MR. ASNER:  Mr. Wahab was.  Perhaps the best evidence

22   of that, as you just take a look for example at Government

23   Exhibit H, this is the material that was found on Mr. Elekede

24   red handed when he was arrested by the Florida police.  And in

25   there are all of these addresses and names and Social Security

7103ELES                    Sentence

1    numbers.  He was a much bigger player in all of this.

2             But, going to the disparity point, which I think is a

3    fair one, actually a sentence of 34 months in other areas of

4    the country clearly would be double.  For example, if you take

5    Houston, this would easily be a 70 or 80 month sentence.  That

6    would not be not normal here.

7             THE COURT:  Say that again?

8             MR. ASNER:  In a place like Houston, a sentence in a

9    case like this would be significantly higher.  There is a

10   disparity across the country.  This district, at least in

11   identity theft cases, is way lower from my experience and what

12   I hear from the agents.  I've done a lot of identity theft

13   cases.  The sentences we get in this district are way lower

14   than other parts of the country.

15            You can see this is a ring of people, they know each

16   other both on a professional illegal framework, but also on a

17   social framework.  One of the things we've discovered in doing

18   these sorts of rings is they all talk to each other.  They all

19   talk to each other about the various sentences they get.  I

20   would venture to say that if we had access to all of the e-mail

21   accounts that various identity thieves are working, probably

22   within about 24 hours the sentence your Honor gives will be

23   hitting the Internet, and various people in this community of

24   identity thieves will evaluate that when they go forward and do

25   crimes.  And I think it's very important for your Honor to

7103ELES                    Sentence

1   consider not only the deterrence of this particular individual,

2   but general deterrence.

3        For that reason, even if you adopt your guidelines

4   analysis, which I respectfully disagree with, I would ask you

5   go up and send a message here.  This is a big problem for this

6   country, and we get a small minority of the people who actually

7   are doing this.  This one, as you know from the facts, we

8   stumbled upon.  Had this person, Mr. Elekede, not made a

9   mistake, and essentially angered the person to have him hack

10  back in, we would've never had this case and Mr. Elekede would

11  still be free doing all of these crimes.

12       So, your Honor, I think when we have the opportunity

13  to actually send a message here, I think you should send a

14  message.  I would argue for a higher range.

15       Along the same lines, your Honor acknowledged that

16  your estimate of loss here was conservative.  Even if you don't

17  take my guidelines analysis, even your Honor's analysis is

18  conservative.  What you are saying is there's $500 per credit

19  card.  It's been 30 years at least I think since credit cards

20  routinely had credit limits of $500.  The reason they say $500

21  is we were unable to get the credit limits from the various

22  banks.  Clearly if we had gotten another 30 of those, then the

23  loss amount would be significantly higher.

24       In addition, there was another factor that the

25  government didn't press in its Pimentel, really as a matter of

7103ELES                    Sentence

1   grace, but we clearly could've had a two point bump up because

2   a significant amount of this scheme was conducted from outside

3   the United States.  And it was arguably sophisticated.  Under

4   the guidelines, that would be another two points.  He's gotten

5   a lot of breaks along the way.  And essentially giving him a

6   break in a case, frankly, this egregious of going down to 34

7   months, I would urge your Honor not to do for the reason I just

8   said.

9              MR. DRATEL:  I guess just that I don't think the Court

10  is giving him a break, so to speak.  I think the Court is

11  imposing a sentence that the Court thinks is appropriate under

12  the circumstances, sufficient but no greater than necessary.

13  Also I think that the question of message would really just

14  aggravate the disparity that exists already in a truly unfair

15  way that didn't seem to be a problem with Mr. Wahab's sentence.

16             THE COURT:  Okay.  I am going to adopt the findings of

17  fact in the presentence investigation report, unless you wanted

18  to talk about any other in particular.

19             MR. DRATEL:  No, your Honor.

20             THE COURT:  Or Mr. Elekede or the government.

21             MR. ASNER:  No, your Honor.

22             THE COURT:  Okay.  Then I think we can move to the

23  sentence.  I am comfortable that the 34-month sentence which

24  would include an additional from today as it were 14 months of

25  incarceration is a reasonable one.

7103ELES                    Sentence

1              I would ask Mr. Elekede to stand and I am going to

2      impose the sentence.  As I said, doing a guidelines analysis I

3      came up with the 37 to 46 month sentencing range.  The offense

4      level being 21 and the criminal history category being III.  I

5      am imposing a sentence of 34 months, having considered the

6      factors at 18 U.S.C. Section 3553(a).  That would be followed

7      by three years of supervised release subject to the following

8      terms and conditions, the so-called mandatory conditions, that

9      defendant not commit another federal, state or local crime;

10     that he not illegally possess a controlled substance; that he

11     not possess a firearm, dangerous weapon or destructive device;

12     and that he refrain from any unlawful use of a controlled

13     substance; that he be required to submit to one drug test

14     within 15 days of placement on supervised release, if that

15     comes into play, and at least two unscheduled drug tests

16     thereafter as may be directed by the probation officer.

17             In addition he should comply with the standard

18     conditions one through 13 plus the following special

19     conditions, one is that he cooperate with the Department of

20     Homeland Security Bureau of Citizenship and Immigration

21     Services in connection with any proceedings that they may bring

22     to determine his status in the United States and abide by their

23     rules and regulations and laws.  In addition, to the extent

24     that there is supervised release within this country, it would

25     be within Mr. Elekede's district of residence.  He would be

7103ELES                    Sentence

1    required to report to probation within 48 hours of his release

2    from custody.  I am not imposing a fine.  I am deferring

3    restitution for a date that whether he select.  Incidentally --

4    well, let's wait until we select the date and figure out what

5    that amount is.  I am imposing a $100 special assessment which

6    is due immediately.

7            The reasons for the sentence are those that I

8    mentioned before and incorporate here by reference.  I think

9    this sentence complies with the criteria of 18 U.S.C. Section

10   3553(a) and the sentence is reasonable in light of those

11   criteria.

12           Does either counsel know of any legal reason why the

13   sentence should not be imposed as so stated?

14           MR. ASNER:  No, your Honor.

15           MR. DRATEL:  No, your Honor.

16           THE COURT:  I hereby order the sentence to be imposed

17   as so stated.

18           Mr. Elekede, you have the right to appeal this

19   sentence.  If you are unable to pay the cost of an appeal, you

20   have the right to apply for leave to appeal in forma pauperis.

21   If you request, the clerk of the court will prepare and file a

22   notice of appeal on your behalf immediately.  Do you understand

23   your appeal rights?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Were there any open counts that the

7103ELES                    Sentence

1    government wanted to --

2          MR. ASNER:  There is an underlying indictment that we

3    hereby move to dismiss.

4          THE COURT:  I grant that application.  Did counsel,

5    starting with the government, wish to add anything to this

6    proceeding apart from restitution?

7          MR. ASNER:  No, your Honor.

8          MR. DRATEL:  No, your Honor.

9          THE COURT:  Let's pick a date.  Perhaps, Mr. Asner,

10   you could send me a letter one way or another indicating what

11   you believe to be the information that we need to fix

12   restitution, and if you could do in reasonably say in a week or

13   two, I'd appreciate it.

14         MR. ASNER:  The only concern I have is I am actually

15   scheduled to be out come January 29 for a medical reason.  I

16   should be out between three and four weeks.  So, the chance of

17   me getting it done before Friday, given everything I have to

18   take care of before then, are slim.  I would ask if I could

19   submit it say in four weeks.

20         THE COURT:  Under the statute we have 90 days?

21         MR. ASNER:  Yes, your Honor.

22         THE COURT:  I guess there's no harm done.

23         MR. ASNER:  There's no harm, your Honor.

24         THE COURT:  Let's --

25         MR. ASNER:  Early March would be ideal for me to

7103ELES                    Sentence

1    submit a letter.

2              THE COURT:  Okay.  Why don't we have a letter date and

3    a court date.  From the date of your letter, if it's not on

4    consent as it were, we'll give Mr. Dratel another week to

5    respond.

6              MR. ASNER:  Say March 5 for my letter?

7              THE COURT:  Yes, and March 12 for Mr. Dratel, then a

8    week later for us to reconvene.  March 15 at 10:30.

9              MR. DRATEL:  Very good.

10             THE COURT:  I think that concludes our work for today.

11             MR. ASNER:  Very good.  Thanks.

12             THE COURT:  Thanks a lot.

13                            o0o

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT C

Date: Thu, 8 Apr 2004 05:21:22 -0700 (PDT)
From: "Hassan K" <jjkalon@yahoo.com>  Add to Address Book
Subject: Na Important oh......
To: getting2k@yahoo.com

John M. Haley Address Line  City Weymouth State/Prov MA Country US Customer Zip/Postal  Phone:
Card Number          3613 Exp    CVV2

John Faugh Address Line          City Rochester State/Prov NY Country US Zip/Postal      Phone      Card Number
          6682 Exp    CVV2

John W. Hastings Address Line    City Dallas State/Prov TX Country US Zip/Postal    Phone      Card Number
          1151 Exp    CVV2

**********

John Santilli Address Line      City West Warwick State/Prov RI Country US Zip/Postal  Phone      Card
Number          3637 Exp    CVV.

**

5100

John D Greene Address Line
Card Number                3058 Exp                CVV                City highland beach State/Prov FL Country US Zip/Postal        Phone                Card

**

John Santilli Address Line
Number               3637 Exp               CVV2        City West Warwick State/Prov RI Country US Zip/Postal RI Phone

John R. Ferriera Address Line
Card Number               1238 Exp               CVV2        City Las Vegas State/Prov NV Country US Zip/Postal        Phone

**

john marcus Address Line
5658 Exp               CVV2        City ashland State/Prov VA Country US Zip/Postal        Phone        Card Number

**

Johnathan W. Neff Address Line
Number               7402 Exp               CVV2        City Winchester State/Prov IL Country US Zip/Postal        Phone        Card

*

John W. Evans V. Address Line
Number               4987 Exp               CVV2        City Kingwood State/Prov TX Country US Zip/Postal        Phone        Card

**

John miller Address Line
1017 Exp               CVV2        City marietta State/Prov GA Country US Zip/Postal        Phone        Card Number

Amanda I. Johnson Address Line
City SARASOTA State/Prov FL Country US Zip/Postal --- Phone
Card Number                4119 Exp                CVV2

Johnny A. Kennedy Address Line
City elsmere State/Prov KY Country US Zip/Postal  Phone       Card Number
4579 Exp        CVV2

John . Ross Address Line
City New Hall State/Prov CA Country US Zip/Postal        Phone       Card
Number        4153 Exp        CVV2

Jeremiah John. Small Address Line
City Mesa State/Prov AZ Country US Zip/Postal      Phone       Card
Number        8674 Exp        CVV2

Christine L. Johnston Address Line
City CUMMING State/Prov GA Country US Zip/Postal       Phone
Card Number        8881 Exp        CVV2

John G. Sanfilippo Address Line
City Cincinnati State/Prov OH Country US Zip/Postal        Phone       Card
Number        6181 Exp        CVV2

John D. Paxton Address Line
City Mason State/Prov OH Country US Zip/Postal        Phone       Card
Number        9801 Exp        CVV2

5102

John Valente Address Line
5860 Exp    7 CVV2    City Stratford State/Prov CT Country US Zip/Postal    Phone    Card Number

John M. Dillard Address Line
Number    5023 Exp    CVV2    City Athens State/Prov GA Country US Zip/Postal    Phone    Card

John P. McCarthy Jr Address Line
Number    7743 Exp    CVV2    City Abington State/Prov MA Country US Zip/Postal    Phone    Card

john a. chudyi Address Line
6528 Exp    CVV2    City wallingford State/Prov CT Country US Zip/Postal    Phone    Card Number

John .. Faugh Address Line
6682 Exp    CVV2    City Rochester State/Prov NY Country US Zip/Postal    Phone    Card Number

John P. Schoff Address Line
Card Number    4772 Exp    City Fort Wayne Customer State/Prov IN Country US Zip/Postal    CVV2    Phone

John .. Dimuzio Address Line
Number    5157 Exp    CVV2    City livingston State/Prov NJ Country US Zip/Postal    Phone    Card

**

John P. Macmiller Address Line    City San Jose Customer State/Prov CA Country US Zip/Postal    Phone
Card Number    :0289 Exp    CVV2

John Masinko Address Line    City Roswell State/Prov GA Country US Zip/Postal    Phone    Card
Number    0901 Exp    CVV2

**

John D. Pittenger Address Line    City Elgin Customer State/Prov MN Country US Zip/Postal    Phone    Card
Number    2685 Exp    CVV2

**

John G . Davis Address Line    City    State/Prov GA Country US Zip/Postal    ) Phone    Card
Number :    11509 Exp    1 CVV2

John J. Lemmons Address Line    City Conway State/Prov AR Country US Zip/Postal    Phone    Card
Number    7042 Exp    5 CVV2

Ryan M. Johnson Address Line    City Liberty State/Prov MO Country US Zip/Postal    Phone    Card Number
2583 Exp    CVV2

**

5104

john w. yaeger Address Line
Number    4918 Exp    CVV2
City napervile State/Prov IL Country US Zip/Postal    Phone    Card

keith c. johnson Address Line
Number    2919 Exp    CVV2
City chicago State/Prov IL Country US Zip/Postal    Phone    Card

John C. Franz Jr. Address Line
Number    8678 Exp    CVV2
City Hamburg State/Prov NY Country US Zip/Postal    Phone    Card

**

Christopher B. Johnson Address Line
Number    1426 Exp    CVV2
Dr. City Charlot State/Prov NC Country US Zip/Postal    Phone    Card

**

John F. Lambert Address Line
Card Number    1945 Exp    CVV2
City Cooperstown State/Prov NY Country US Zip/Postal    Phone

**

Channon A. Johnson Address Line
Number    9950 Exp    CVV2
City Woodbridge State/Prov NJ Country US Zip/Postal    Phone    Card

**

amanda l. johnson Address Line
Card Number    4119 Exp    CVV2
City SARASOTA State/Prov FL Country US Zip/Postal    Phone

5105

****

John Wieczerak **Address Line**          CVV2

              6135 Exp

**City** robbinsville **State/Prov** NJ **Country** US **Zip/Postal**          **Phone**          **Card Number**


John c. bauamn **Address Line**          CVV2

**Number**          7929 Exp

**City** gahanna **State/Prov** OH **Country** US **Zip/Postal**          **Phone**          **Card**

5106

Page 1 of 1

**Main Identity**

| | |
|---|---|
| **From:** | "Hassan K" <jikalon@yahoo.com> |
| **To:** | <getting2k@yahoo.com> |
| **Cc:** | <mugun500@msn.com> |
| **Sent:** | Monday, June 30, 2003 1:42 AM |
| **Subject:** | Ike....... |

| | |
|---|---|
| Name: | **William E. McClain** |
| Address1: | |
| Address2: | |
| City: | **Denver** |
| Zip: | |
| State: | **CO** |
| Country: | **US** |
| Phone: | |
| Email: | |

*You are using: BCE*

## Use ONLY for BLUE & RED CARDS

| Credit Card: | 3584 | Use this card: ○ | CVV: |
|---|---|---|---|
| Exp. Date: | | Type: | |

| Money in: | Yes ◉ | No ○ |
|---|---|---|

Do you Yahoo!?
SBC Yahoo! DSL - Now only $29.95 per month!

3/10/2006   **5297**

## Main Identity

| | |
|---|---|
| **From:** | "Hassan K" <jikalon@yahoo.com> |
| **To:** | <getting2k@yahoo.com> |
| **Cc:** | <mugun500@msn.com> |
| **Sent:** | Monday, June 30, 2003 1:50 AM |
| **Subject:** | Another...lke |

| | |
|---|---|
| Name: | **David A. Adams** |
| Address1: | **1904 lincoln highway** |
| Address2: | |
| City: | **Boswell** |
| Zip: | |
| State: | **PA** |
| Country: | **US** |
| Phone: | |
| Email: | |

*You are using: BCE*
### Use ONLY for BLUE & RED CARDS

| Credit Card: | 3093 | Use this card: | ○ |
|---|---|---|---|
| Exp. Date: | | Type: | |
| Credit Card: | 6120 | Use this card: | ○ |
| Exp. Date: | | Type: | T |
| Credit Card: | 2642 | Use this card: | ○ |
| Exp. Date: | | Type: | |
| Credit Card: | 9018 | Use this card: | ○ |
| Exp. Date: | | Type: | |
| Money in: | Yes ◉ | No ○ | |

Do you Yahoo!?
SBC Yahoo! DSL - Now only $29.95 per month!

3/10/2008       5298

## Main Identity

| | |
|---|---|
| **From:** | "Infos As Promised" <nawhich1o@yahoo.com> |
| **To:** | <getting2k@yahoo.com> |
| **Cc:** | <mugun500@msn.com> |
| **Sent:** | Friday, May 07, 2004 10:18 PM |
| **Subject:** | Answer... |

Adam D. Kaplan

3139

Weston, FL

( . . . . . . . . . . . . . . . . . . . . .

Ashley Kaplan

8011

Hollywood, FL .

Do you Yahoo!?
Win a $20,000 Career Makeover at Yahoo! HotJobs

**Main Identity**

**From:**      "Infos As Promised" <nawhich1o@yahoo.com>
**To:**        <investecm@yahoo.com>
**Sent:**      Sunday, April 04, 2004 5:17 AM
**Subject:**   Infos from Me. #

Richard Hinten
          4577

Issuing bank:
Bank's phone# :
Billing address:
          Moriches, NY 1
Phone:
*****************************************************
Fantoni, Michele Giuseppe.
          : 3303

Issuing bank: 9
(
Billing address: (

P.S: I'm not sure about this guy's address... but don't worry I will get it for you by monday.
******************************************************************
Bernard Paroly.
          : 2120

Issuing bank: I
Bank's phone #:
Billing address:
          Hamden. CT.
I will also send you the phone # on monday.
*******************************************************************
Lamar H. Williams
          1724

Issuing bank:
Billing address
          Montgomery, AL
Date of Birth:
SS:       )-0740
*******************************************************************
Leonard F. Troyato
          : 0562

F
Issuing bank:
Bank's phone#:
...
          0134

GOVERNMENT
EXHIBIT
NA-1

Issuing Bank: (                          )
Bank's phone: 

......

                              6228

Issuing Bank: 
Bank's Phone: 

.....

                    7062
                          601
Issuing bank:
Bank's Phone: 

.....

                    8664


Billing Address on all those infos for  Leonard Troyato:

Atlanta, GA
Phone: 
**************************************************
If you have any doubt or question don't hesitate to contact me.

Pat"

---

Do you Yahoo!?
Yahoo! Small Business $15K Web Design Giveaway - Enter toda

3/15/2006  5431

**Main Identity**

| | |
|---|---|
| **From:** | "Infos As Promised" <nawhich1o@yahoo.com> |
| **To:** | "investec Mining Corporation" <investecm@yahoo.com> |
| **Sent:** | Monday, April 05, 2004 3:01 AM |
| **Subject:** | Other missing one... |

Bernard Paroly.

2120

Issuing bank: I
Bank's phone #: :
Billing address:

New Heaven, CT :

---

Do you Yahoo!?
Yahoo! Small Business $15K Web Design Giveaway - Enter toda

## Main Identity

**From:** "Infos As Promised" <nawhich1o@yahoo.com>
**To:** "investec Mining Corporation" <investecm@yahoo.com>
**Sent:** Monday, April 05, 2004 4:44 AM
**Subject:** For today.

Richard Jamieson
　　　　· 2282

Billing Address: 1
　　　　KELLER. TX

Phone: {

Only one info today... I will send more on tuesday.

Pat"

---

Do you Yahoo!?
Yahoo! Small Business $15K Web Design Giveaway - Enter toda

## Main Identity

**From:**     "Infos As Promised" <nawhich1o@yahoo.com>
**To:**       "Investec Mining Corporation" <investecm@yahoo.com>
**Sent:**     Friday, May 07, 2004 10:17 PM
**Subject:**  Re:

Daniel O. Williams
          : 8972

**City:** Silver Spring
**State:** MD
**Zip:** :
**Phone:**
***********************************************

Charles R. Williams
          . 2040

City: Ketchum
State: OH

That's all for now.

Take care.

Do you Yahoo!?
Win a $20,000 Career Makeover at Yahoo! HotJobs </a

## Main Identity

| | |
|---|---|
| From: | "Infos As Promised" <nawhich1o@yahoo.com> |
| To: | "Investec Mining Corporation" <investecm@yahoo.com> |
| Sent: | Tuesday, April 06, 2004 4:44 AM |
| Subject: | Info... |

Juan O. Alvarez

2839

Billing Address:
San Francisco, CA

Do you Yahoo!?
Yahoo! Small Business $15K Web Design Giveaway - Enter toda

5756

To From : Hassan K <jlkalon@hotmail.com>
P
of
Fo Sent :
rm Wednesday, April 2, 2003 7:01 AM

To : getting2k@hotmail.com, elekede@hotmail.com
Subject : Another Ikes

Inbox
Ecards

Name: Jim Apovian
Address1:
Address2:

City: Merrimack
Zip:

0000308

6476

From :
Hassan K <jlkalon@hotmail.com>

Sent :
Wednesday, April 2, 2003 6:21 AM

To :
getting2k@hotmail.com, elekede@hotmail.com

Subject :
Ike

Inbox

cards

0000309

6477



Pin Number:

**Name:**
**Robert P. Smisek**

**Address1:**

**Address2:**
**n/a**

**City:**
**Oceanside**

**Zip:**

**State:**
**NY**

**Country:**
**US**

**Phone:**

**Email:**

**Top of Form**

You are using: BCE
Use ONLY for BLUE & RED CARDS

**Credit Card:**    **0546**

Use this card:  ○

**Exp. Date:**

**Type:**

0000310

6478

From : Hassan K <ilkalon@yahoo.com>

Sent : Monday, June 30, 2003 5:17 AM

To : getting2k@hotmail.com

CC : mugun500@msn.com

Subject : Ike...





0000326

6494



**Name:**
Ryan C. Chatfield

Address1:

Address2:

City:
temecula

Zip:

State:
CA

Country:
US

Phone:

Email:

Top of Form

You are using: BCE
Use ONLY for BLUE & RED CARDS

Credit Card:

Use this card:

Exp. Date:

Type:

**0000327**

**6495**

From :
Hassan K <jlkalon@yahoo.com>

Sent :
Monday, June 30, 2003 6:23 AM

To :
getting2k@hotmail.com

CC :
mugun500@msn.com

Subject :
Another...Ike

July Ike

Inbox

0000330

6498



**Name:**
**agnieszka m. klimek**

**Address1:**

**Address2:**

**City:**
**bufford**

**Zip:**

**State:**
**GA**

**Country:**
**US**

**Phone:**

**Email:**

Top of Form

You are using: BCE
Use ONLY for BLUE & RED CARDS

**Credit Card:**

Use this card: ○

Exp. Date:

**Type:**

0000331

6499



Top of Form

Top of Form

Sun, 29 Jun 2003 23:50:56 -0700 (PDT)

"Hassan K" <ilkalon@yahoo.com>  View Contact Details

Another...ike

getting2k@yahoo.com,
mugun500@msn.com

You are using: BCE
Use ONLY for BLUE & RED CARDS

0000370

6538



**0000371**

**6539**



Krutville, TN

Christopher L. Core
14560.......

SpringDale , AP

Shala Shala       4353

M.M.Name: Wilson

0000372

6540

# EXHIBIT D

**U.S. v. LANRE ELEKEDE**
**05 Cr. 494 (RMB)**
**LOSS CALCULATIONS**

| | Name | Social | Credit | Bank Account | Access Devices Total | Actual/Att. Charges | Credit Limit/Funds Avail | Loss | Source |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | |
| 2 | Abney | 1 | 0 | 0 | 1 | | | $500.00 | G2K |
| 3 | Adams | 0 | 4 | 0 | 4 | | | $2,000.00 | JustPins |
| 4 | Alvarez | 0 | 1 | 0 | 1 | | | $500.00 | Nawhich1o |
| 5 | Anderson | 1 | 1 | 0 | 2 | $0.00 | $7,500.00 | $8,000.00 | G2K |
| 6 | Apovian | 0 | 3 | 0 | 3 | $110.00 | $1,000.00 | $2,000.00 | JustPins |
| 7 | Baer | 1 | 2 | 0 | 3 | $15,600.00 | $15,800.00 | $16,800.00 | JustPins |
| 8 | Baltz | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 9 | Bauman | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 10 | Berman | 1 | 0 | 0 | 1 | | | $500.00 | Notebook |
| 11 | Bowers | 1 | 0 | 0 | 1 | | | $500.00 | G2K, MUG |
| 12 | Brand | 1 | 1 | 0 | 2 | | | $1,000.00 | Notebook |
| 13 | Brumby | 0 | 1 | 0 | 1 | | | $500.00 | G2K |
| 14 | Caufield | 0 | 3 | 0 | 3 | $190.00 | $15,816.54 | $15,816.54 | JustPins |
| 15 | Chai | 1 | 1 | 0 | 2 | $0.00 | $6,900.00 | $7,400.00 | JustPins |
| 16 | Chatfield | 0 | 2 | 0 | 2 | | | $1,000.00 | JustPins |
| 17 | Chudyi | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 18 | Cooperman | 1 | 1 | 0 | 2 | | | $1,000.00 | Notebook |
| 19 | Core | 1 | 1 | 0 | 2 | $380.00 | $3,000.00 | $3,500.00 | JustPins |
| 20 | Dang | 0 | 1 | 0 | 1 | $0.00 | | $500.00 | JustPins |
| 21 | Davis | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 22 | Deal | 1 | 1 | 0 | 2 | | | $1,000.00 | JustPins |
| 23 | Delpelleau | 0 | 1 | 0 | 1 | | | $500.00 | P5K |
| 24 | Dillard | 0 | 1 | 0 | 1 | $0.00 | $866.79 | $866.79 | JustPins |
| 25 | Dimuzio | 0 | 1 | 0 | 1 | $0.00 | $400.00 | $500.00 | JustPins |
| 26 | Dubuque | 0 | 1 | 0 | 1 | $277.00 | $3,500.00 | $3,500.00 | JustPins |
| 27 | Efron | 1 | 0 | 0 | 1 | | | $500.00 | Notebook |
| 28 | Ely | 1 | 1 | 0 | 2 | $200.00 | $8,500.00 | $9,000.00 | JustPins |
| 29 | Evans | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 30 | Fantoni | 0 | 1 | 0 | 1 | | | $500.00 | Nawhich1o |
| 31 | Faugh | 0 | 1 | 0 | 1 | $0.00 | $862.71 | $862.71 | JustPins |
| 32 | Fauria | 1 | 1 | 0 | 2 | | | $1,000.00 | JustPins |
| 33 | FBMA | 0 | 1 | 0 | 2 | | | $500.00 | JustPins |
| 34 | Febbo Jr. | 1 | 0 | 0 | 1 | | | $500.00 | Notebook |

**U.S. v. LANRE ELEKEDE**
**05 Cr. 494 (RMB)**
**LOSS CALCULATIONS**

| | Name | Social | Credit | Bank Account | Access Devices Total | Actual/Att. Charges | Credit Limit/Funds Avail | Loss | Source |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | |
| 35 | Ferreira | 0 | 1 | 0 | 1 | $0.00 | $1.11 | $500.00 | JustPins |
| 36 | Finerty | 1 | 0 | 0 | 1 | | | $500.00 | Notebook |
| 37 | Flaherty | 1 | 1 | 0 | 2 | | | $1,000.00 | G2K |
| 38 | Flaherty | 1 | 0 | 0 | 1 | | | $500.00 | Notebook |
| 39 | Flaherty | 1 | 1 | 0 | 2 | | | $1,000.00 | Notebook |
| 40 | Franz | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 41 | Fretwell | 1 | 0 | 0 | 1 | | | $500.00 | G2K |
| 42 | Friedman | 1 | 0 | 0 | 1 | | | $500.00 | Notebook |
| 43 | Fung | 1 | 2 | 0 | 3 | $0.00 | $8,000.00 | $9,000.00 | JustPins and Notebook |
| 44 | Gonzalez | 1 | 0 | 0 | 1 | | | $500.00 | Notebook |
| 45 | Gordon | 1 | 0 | 0 | 1 | | | $500.00 | Notebook |
| 46 | Green | 1 | 0 | 0 | 1 | | | $500.00 | Notebook |
| 47 | Greene | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 48 | Haire | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 49 | Haley | 0 | 1 | 0 | 1 | $0.00 | $350.00 | $500.00 | JustPins |
| 50 | Hand | 0 | 1 | 0 | 1 | $0.00 | $28,000.00 | $28,000.00 | JustPins |
| 51 | Hargis | 1 | 0 | 2 | 3 | | | $1,500.00 | Notebook |
| 52 | Hastings | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 53 | Hinten | 0 | 1 | 0 | 1 | | | $500.00 | Nawhich1o |
| 54 | Holmes | 1 | 1 | 0 | 1 | | | $500.00 | Notebook |
| 55 | Hotmek | 1 | 1 | 0 | 2 | $50.00 | $667.88 | $1,167.88 | JustPins |
| 56 | Horth | 1 | 0 | 0 | 1 | | | $500.00 | Notebook |
| 57 | Hough | 1 | 0 | 0 | 1 | | | $500.00 | Notebook |
| 58 | Hough | 1 | 0 | 0 | 1 | | | $500.00 | Notebook |
| 59 | Jamieson | 0 | 1 | 0 | 1 | | | $500.00 | Nawhich1o |
| 60 | Johnson, A | 0 | 1 | 0 | 1 | $154.84 | | $500.00 | JustPins |
| 61 | Johnson, C | 0 | 1 | 0 | 1 | $0.00 | $1,162.09 | $1,162.09 | JustPins |
| 62 | Johnson, C | 0 | 1 | 0 | 1 | $4,260.00 | $3,800.00 | $4,260.00 | JustPins |
| 63 | Johnson, K | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 64 | Johnson, R | 0 | 1 | 0 | 1 | $1,400.00 | $13,500.00 | $13,500.00 | JustPins |
| 65 | Johnston | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 66 | Jones | 1 | 2 | 0 | 3 | | | $1,500.00 | Notebook |

**U.S. v. LANRE ELEKEDE**
**05 Cr. 494 (RMB)**
**LOSS CALCULATIONS**

| | A Name | C Social | D Credit | E Bank Account | F Access Devices Total | G Actual/Att. Charges | H Credit Limit/Funds Avail | I Loss | K Source |
|---|---|---|---|---|---|---|---|---|---|
| 67 | Jordany | 1 | 1 | 0 | 2 | | | $1,000.00 | Notebook |
| 68 | Kaplan | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 69 | Kaplan | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 70 | Kelly | 1 | 1 | 0 | 2 | $0.00 | $22,600.00 | $23,100.00 | JustPins |
| 71 | Kemmer | 1 | 0 | 0 | 1 | | | $500.00 | Notebook |
| 72 | Kennedy | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 73 | Kissenoff | 1 | 0 | 0 | 1 | | | $500.00 | Notebook |
| 74 | Klimek | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 75 | Krebs | 1 | 1 | 0 | 2 | | $0.00 | $1,000.00 | JustPins |
| 76 | Lambert | 0 | 1 | 0 | 1 | $0.00 | | $500.00 | JustPins |
| 77 | Lampley | 1 | 0 | 1 | 2 | | | $1,000.00 | Notebook |
| 78 | Langley | 1 | 2 | 0 | 3 | | | $1,500.00 | JustPins |
| 79 | Lankford | 1 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 80 | Larson | 1 | 0 | 0 | 1 | | | $500.00 | Notebook |
| 81 | Lemmons | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 82 | LNU01 | 0 | 1 | 0 | 1 | | $4,500.00 | $4,500.00 | JustPins |
| 83 | LNU02 | 0 | 1 | 0 | 1 | | $20,000.00 | $20,000.00 | JustPins |
| 84 | LNU03 | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 85 | LNU04 | 0 | 1 | 0 | 1 | $0.00 | | $500.00 | Notebook |
| 86 | LNU05 | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 87 | LNU06 | 0 | 1 | 0 | 1 | | $22,000.00 | $22,000.00 | JustPins |
| 88 | LNU07 | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 89 | LNU08 | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 90 | LNU09 | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 91 | LNU10 | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 92 | LNU11 | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 93 | LNU12 | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 94 | LNU13 | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 95 | LNU14 | 0 | 1 | 0 | 1 | | | $500.00 | Notebook |
| 96 | LNU15 | 0 | 1 | 0 | 1 | | | $500.00 | Notebook |
| 97 | LNU16 | 0 | 0 | 1 | 1 | | | $500.00 | Notebook |
| 98 | LNU17 | 0 | 0 | 1 | 1 | | | $500.00 | Notebook |
| 99 | LNU17 | 0 | 0 | 1 | 1 | | | $500.00 | Notebook |

## U.S. v. LANRE ELEKEDE
### 05 Cr. 494 (RMB)
### LOSS CALCULATIONS

| | Name | Social | Credit | Bank Account | Access Devices Total | Actual/Att. Charges | Credit Limit/Funds Avail | Loss | Source |
|---|---|---|---|---|---|---|---|---|---|
| | A | C | D | E | F | G | H | I | K |
| 100 | LNU19 | 0 | 0 | 1 | 1 | | | $500.00 | Notebook |
| 101 | LNU20 | 0 | 0 | 1 | 1 | | | $500.00 | Notebook |
| 102 | LNU21 | 0 | 0 | 1 | 1 | | | $500.00 | Notebook |
| 103 | LNU22 | 0 | 0 | 1 | 1 | | | $500.00 | Notebook |
| 104 | LNU24 | 0 | 0 | 1 | 1 | | | $500.00 | Notebook |
| 105 | LNU25 | 0 | 0 | 1 | 1 | | | $500.00 | Notebook |
| 106 | LNU26 | 0 | 1 | 1 | 2 | | | $1,000.00 | Address Book |
| 107 | LNU27 | 1 | 0 | 3 | 4 | | | $2,000.00 | Address Book |
| 108 | Lombardelli | 0 | 1 | 1 | 2 | | | $1,000.00 | JustPins |
| 109 | Lorenzen | 0 | 1 | 1 | 2 | | | $1,000.00 | JustPins |
| 110 | Lowman | 0 | 0 | 0 | 0 | | | $0.00 | JustPins |
| 111 | Macmiller | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 112 | Madsen | 1 | 1 | 0 | 2 | $940.28 | $10,000.00 | $10,500.00 | JustPins |
| 113 | Maher | 1 | 1 | 0 | 2 | | | $1,000.00 | Notebook |
| 114 | Majors | 1 | 1 | 0 | 2 | $5,349.13 | $4,800.00 | $5,349.13 | P5K |
| 115 | Marcus | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 116 | Marin | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 117 | Masinko | 1 | 1 | 0 | 2 | $142.29 | $9,000.00 | $9,000.00 | JustPins |
| 118 | Mathis | 1 | 1 | 0 | 2 | $0.00 | $4,600.00 | $5,100.00 | JustPins |
| 119 | McCarthy | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 120 | McCarthy | 1 | 0 | 0 | 1 | | | $500.00 | Notebook |
| 121 | McClain | 0 | 1 | 0 | 1 | $0.00 | $2,900.00 | $2,900.00 | JustPins |
| 122 | McEvilly | 0 | 1 | 0 | 1 | | | $500.00 | Notebook |
| 123 | Miller | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 124 | Moore | 1 | 0 | 0 | 1 | $0.00 | $384.14 | $500.00 | MUG, Notebook |
| 125 | Morris | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 126 | Motoyama | 0 | 1 | 0 | 1 | $0.00 | $13,200.00 | $13,200.00 | JustPins |
| 127 | Murphy | 1 | 2 | 0 | 3 | $243.25 | $2,500.00 | $3,500.00 | JustPins |
| 128 | Mustapha | 1 | 0 | 0 | 1 | | | $500.00 | G2K |
| 129 | Mustapha | 1 | 0 | 0 | 1 | | | $500.00 | Notebook |
| 130 | Nagy | 0 | 1 | 0 | 1 | $42.59 | $22,000.00 | $22,000.00 | JustPins |
| 131 | Neff | 0 | 1 | 0 | 1 | $0.00 | $3,650.00 | $3,650.00 | JustPins |
| 132 | Ngo | 0 | 1 | 0 | 1 | $178.72 | $1,596.17 | $1,596.17 | JustPins |

## U.S. v. LANRE ELEKEDE
## 05 Cr. 494 (RMB)
## LOSS CALCULATIONS

| | A Name | C Social | D Credit | E Bank Account | F Access Devices Total | G Actual/Att. Charges | H Credit Limit/Funds Avail | I Loss | K Source |
|---|---|---|---|---|---|---|---|---|---|
| 133 | Novoson | 0 | 2 | 0 | 2 | $213.00 | $2,650.00 | $2,650.00 | JustPins |
| 134 | Oney | 0 | 1 | 0 | 1 | $0.00 | | $500.00 | JustPins |
| 135 | Ostrove | 1 | 1 | 1 | 3 | | | $1,500.00 | Notebook |
| 136 | Page | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 137 | Panaggio | 1 | 1 | 0 | 2 | $0.00 | $3,200.00 | $3,700.00 | JustPins |
| 138 | Paradise | 1 | 1 | 0 | 2 | | | $1,000.00 | JustPins |
| 139 | Paroly | 0 | 1 | 0 | 1 | | | $500.00 | Nawhich1o |
| 140 | Patel | 0 | 1 | 0 | 1 | $293.25 | $9,000.00 | $9,000.00 | JustPins |
| 141 | Paxton | 0 | 1 | 0 | 1 | $0.00 | | $500.00 | JustPins |
| 142 | Perea | 1 | 1 | 1 | 3 | | | $1,500.00 | JustPins |
| 143 | Perlman | 1 | 1 | 0 | 2 | | | $1,000.00 | JustPins |
| 144 | Pittenger | 0 | 1 | 0 | 1 | $0.00 | $7,300.00 | $7,300.00 | JustPins |
| 145 | Pozniak | 1 | 0 | 0 | 1 | | | $500.00 | JustPins |
| 146 | Pulloch | 1 | 0 | 3 | 4 | | | $2,000.00 | Notebook |
| 147 | Ranck | 0 | 1 | 0 | 1 | $2,402.30 | $10,100.00 | $10,100.00 | JustPins |
| 148 | Rangle | 1 | 0 | 0 | 1 | | | $500.00 | G2K |
| 149 | Reckamp | 0 | 1 | 0 | 1 | $0.00 | $17,600.00 | $17,600.00 | P5K |
| 150 | Robbins | 1 | 1 | 0 | 2 | $456.59 | $45.14 | $1,000.00 | JustPins |
| 151 | Roberton | 1 | 1 | 0 | 2 | $18.00 | | $1,000.00 | JustPins |
| 152 | Rodriguez | 1 | 1 | 0 | 2 | | | $1,000.00 | JustPins |
| 153 | Ross | 0 | 1 | 0 | 1 | $0.00 | | $500.00 | JustPins |
| 154 | Ross | 1 | 0 | 3 | 4 | | | $2,000.00 | Notebook |
| 155 | Rukayt | 1 | 1 | 4 | 6 | | | $3,000.00 | Notebook |
| 156 | Sanfilippo | 0 | 1 | 0 | 1 | $0.00 | $16,200.00 | $16,200.00 | JustPins |
| 157 | Sanfilli | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 158 | Santos | 0 | 1 | 0 | 1 | $0.00 | | $500.00 | Notebook |
| 159 | Saren | 0 | 1 | 0 | 2 | $0.00 | $12,000.00 | $12,000.00 | JustPins |
| 160 | Schmieder | 1 | 1 | 0 | 2 | | | $1,000.00 | G2K |
| 161 | Schoff | 0 | 1 | 0 | 1 | $0.00 | $300.00 | $500.00 | JustPins |
| 162 | Simon | 1 | 0 | 1 | 2 | | | $1,000.00 | Notebook |
| 163 | Singer | 1 | 0 | 0 | 1 | | | $500.00 | MUG |
| 164 | Skutevik | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 165 | Small | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |

## U.S. v. LANRE ELEKEDE
## 05 Cr. 494 (RMB)
## LOSS CALCULATIONS

| | A | C | D | E | F | G | H | I | K |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Name | Social | Credit | Bank Account | Access Devices Total | Actual/Att. Charges | Credit Limit/Funds Avail | Loss | Source |
| 166 | Smisek | 0 | 3 | 0 | 3 | $0.00 | $4,800.00 | $5,000.00 | JustPins |
| 167 | Thomas | 1 | 0 | 0 | 1 | | | $500.00 | MUG |
| 168 | Thomas | 1 | 2 | 1 | 4 | | | $2,000.00 | Notebook |
| 169 | Troyato | 0 | 5 | 0 | 5 | | | $2,500.00 | Nawhich1o |
| 170 | U'Ren | 1 | 2 | 0 | 3 | | | $1,500.00 | JustPins |
| 171 | Valente | 0 | 1 | 0 | 1 | $0.00 | $0.00 | $500.00 | JustPins |
| 172 | Veal | 1 | 1 | 0 | 2 | $1,066.00 | $15,000.00 | $15,500.00 | JustPins |
| 173 | Verheyen | 0 | 1 | 0 | 1 | | | $500.00 | P5K |
| 174 | Walker | 0 | 1 | 0 | 1 | | | $500.00 | JustPins |
| 175 | Wieczerak | 0 | 1 | 0 | 1 | $671.45 | | $500.00 | JustPins |
| 176 | Williams | 0 | 1 | 0 | 1 | | $17,100.00 | $17,100.00 | Nawhich1o |
| 177 | Williams | 0 | 1 | 0 | 1 | | | $500.00 | Nawhich1o |
| 178 | Williams | 1 | 1 | 0 | 2 | | | $1,000.00 | Nawhich1o |
| 179 | Worley | 1 | 3 | 2 | 6 | | | $3,000.00 | Notebook |
| 180 | Yaeger | 0 | 1 | 0 | 1 | $0.00 | $800.00 | $800.00 | JustPins |
| 181 | | 75 | 156 | 34 | 265 | $34,638.69 | $379,452.57 | $488,181.31 | |

# EXHIBIT E

Sep 17 2008 5:17PM   HP LASERJET FAX                                    p.1

**Delphin Lofunge**                                          Le 08-09-2008
**820-100 Rowena drive**
**From Toronto, Ontario**
**Canada**

**RE: Patrick K. Ngoy** 70526-054

**Your Honor,**

I would like to take this opportunity to speak on behalf of my cousin Patrick K.
Ngoy, who long ago has always been for me a good example to follow, in his way of
life, work and conduct in life. Indeed, I was very surprised by his arrest in the
United States, and I can tell you that since I never cease to pray for him and asking
for the favor of God on him. I know that he is innocent in this affair that is why I
come to you, your honor, pleading on his behalf and asking you to take a decision
which will be supported and which also relieve our entire family. Patrick has always
been someone who has often attended our family, through his good ideas, ambitions
and his willingness to help the family by playing the role of a mediator in conflict
situations, and encouraging those who wish to succeed in Future. I can also testify
that since his arrest, his absence was really felt deep within our family, but we still
pray God for him. That is why with great consideration for him, I am just asking
you to consider my request and of all my family for Patrick.

Please accept the assurances of my distinguished sentiments.


**Respectfully**


**Delphin Lofunge**

# EXHIBIT F

Sep 17 2008 5:17PM    HP LASERJET FAX    p.2

Pélagie Kamwanya Tembwe                               September 6, 2008
820-100 Rowena drive
From Toronto, Ontario
Canada

RE: Patrick K. Ngoy
    70526-054

Your Honor,

I come to you through this letter speaking for my nephew Patrick, to
plead his case to you in this current situation. Indeed, since the
death of my husband in March 2007, I have got too much difficulty to
alleviate the pain of my heart, and it is especially thanks to Patrick
that I have often been consoled by his advice, support and the fact
that he often encouraged me in difficult moments. I come to testify on
his behalf through this letter to tell you that Patrick has never been
involved in fraudulent activities, because since he came to Canada, he
has always been sociable and open to all those who Approached him. He
also often approached others for help. He had to work fairly as any
other person and I've never heard a bad testimony about him, neither in
our family, nor from his friends. Patrick is a boy always nice and
always ready to render service to all those around him. So I come to
you, your honor, asking you to consider my request for him and about
this case. I am just simply asking for your favor, because I believe he
is not guilty in this case.

Hoping a favorable decision to him in this situation, I urge you to
consider my deepest feelings

Respectfully,

Pélagie Kamwanya Tembwe

# EXHIBIT G

Rodney Thomas
Reg.#: 20813-112
MCC, New York

November 02, 2008

Honorable Paul. A. Crotty
US. District Court Judge
Southern District of
New York

Honorable Judge Crotty,

My name is Rodney Thomas, for some time now I have been housed at the Metropolitan Correctional Center, this is my second time a this institution as I have been brought back here for resentencing.

I have been made disabled back in 2002, due to medical indifferences I am now blind. This institution does not have a program that provides assistance to blinds and or disabled inmates with their writing and reading needs. Patrick Kalonji Ngoyi has gone outside of his way to assist me with writing to my five boys, my wife, my mother, legal issues, etc...

I can not begin to tell you what a blessing this has been, because most of inmates in this place try to steal from each other, and try to read people's legal papers for their personal gain. I have no doubt in my mind that everything that Mr. Kalonji has done for me, have been out of the kindness of his heart.

I wish that the bureau of prison had a program that could give Mr.Kalonji a certificate for what he has done for me, so he can present it to your court at the sentencing.

I am humbly asking that you consider this letter as a certificate from a man who would have not been able to stay in contact with his family, and follow up on legal issues without Mr. Kalonji assistance.

Lastly, during my time in the B.O.P system, I have been able to discern that there are only a few men who have this caring and giving heart inside this walls of justice. I pray and ask that you take this in consideration as you sentence Mr. Kalonji.

Thank you,

R. Thomas

Rodney Thomas

# EXHIBIT H



# UNITED STATES GOVERNMENT
# MEMORANDUM

Metropolitan Correctional Center, New York, New York

DATE:   November 9, 2008

TO:   Unit Team 7 North

FROM:   Michael O'Hara, Supv. Chaplain

RE:   Patrick Kalonji Ngoyi - 70526-054


Patrick Kalonji Ngoyi, 70526-054, regularly participates in Catholic Sunday Mass. He is an active participant and helps out in various capacities during Mass. He also translates the sermon from English into Spanish for those inmates who do not understand English. He will on occasion read one of the Scripture lessons. I believe that he is sincere in the practice of his faith and is genuine in his efforts to better himself. Patrick relates well with other inmates and is respectful with staff. He is a big help to the Religious Services programs and a faithful participant in the various services.

# EXHIBIT I

 **NABORS**

## FACSIMILE TRANSMITTAL PAGE

To:       **Sean Kelly**
**Company:**
**Fax:**      1-212-912-7751
**Phone:**

From:       **Starchuk, Laura**
**Company:**    NABORS PRODUCTION SERVICES
**Fax:**
**Phone:**     403-887-7407

## Subject:

Kalonji-Bgoyi

**Date and time of transmission: 10/6/2008 4:46:12 PM**
**Number of pages including this cover sheet: 4**



**Nabors Production Services**
A Division of NABORS CANADA

## PREVIOUS EMPLOYMENT DETAILS

**EMPLOYEE NAME:** Patrick Kalonji Ngoyi

**EMPLOYMENT START DATE:** MARCH 7, 2008

**EMPLOYMENT END DATE:** JULY 30, 2008

**LAST DAY WORKED:** JUNE 20th, 2008

**REASON FOR SEPARATION:** QUIT

**POSITION:**   FLOORHAND

**DESCRIPTION:** LABORER

**BASE RATE:**   $23.90/HR

**ADDITIONAL COMMENTS:**

Gross Year to Date Earnings for 2008 – $21,936.61

**SIGNATURE:**

**DATE:** October 6, 2008
**NAME AND POSITION:**   Laura Starchuk
                         HR Manager
                         Nabors Production Services

---

33 Schenk Industrial Road, Sylvan Lake, Alberta  T4S 2J9 • Telephone: (403) 887-7405 • Fax: (403) 887-3784